IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PREMIERE NETWORK SERVICES, INC.<br><br>Plaintiff,<br><br>v.<br><br>PUBLIC UTILITY COMMISSION OF TEXAS, PAUL HUDSON, Chairman in his official capacity, JULIE PARSLEY, Commissioner in her official capacity, AND BARRY SMITHERMAN, Commissioner in his official capacity,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 3:04-CV-1555-M |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the combined Motion to Dismiss the Public Utility Commission of Texas for Lack of Jurisdiction, and Motion to Dismiss for Improper Venue, or Alternatively, Motion to Transfer Venue of Defendants Paul Hudson, Julie Parsley, Barry Smitherman (collectively "Commissioners") and the Public Utility Commission of Texas ("TPUC") [#10]. For the reasons stated below, the Motion is **GRANTED** in part and **DENIED** in part.

## I. BACKGROUND

Plaintiff Premiere Network Services, Inc. ("Premiere") filed this suit seeking judicial review of a decision rendered by TPUC concerning a dispute between Premiere and Southwestern Bell Telephone, LP, d/b/a SBC-Texas ("SBC"). Premiere and SBC had a

contractual relationship, which Premiere alleges SBC breached. Premiere filed a Complaint with TPUC seeking: (1) payment of approximately $1.9 million in liquidated damages; and (2) resolution of a number of billing disputes. Premiere avers that the ultimate result of TPUC's decisions was that it was required to pay SBC nearly $700,000, while SBC was allowed to delay making its payments to Premiere. Allegedly due to this situation, Premiere filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the Northern District of Texas. Premiere's suit seeks reversal of TPUC's decision, and remand to TPUC, for a determination consistent with the Telecommunications Act of 1996, 47 U.S.C. § 252 ("Act"), and the contract between SBC and Premiere.

By their Motion, Defendants seek two things: first, a dismissal of TPUC from this suit on the grounds that the Eleventh Amendment to the United States Constitution bars Premiere from pursuing its action against TPUC in federal court, and second, a dismissal for improper venue, or in the alternative, a transfer to the Western District of Texas, Austin Division.

## II. ELEVENTH AMENDMENT IMMUNITY

The first basis for dismissal is that TPUC is immune from suit under the Eleventh Amendment. "The presupposition or concept of state sovereign immunity 'has two parts: first, that each State is a sovereign entity in our federal system; and second, that it is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent.'" *Meyers v. Tex.*, No. 02-50452, 2005 U.S. App. LEXIS 9108, at *7 (5th Cir. May 19, 2005) (citing *Fla. Prepaid Postsecondary Educ. Expense Bd. v. Coll. Savs. Bank*, 527 U.S. 627, 634 (1999)). However, a state's Eleventh Amendment immunity is not absolute. There are two circumstances

in which an individual may sue a state in federal court. *Id.* at *9.

> First, Congress may abrogate the states' immunity by authorizing such a suit in the exercise of its power to enforce the Fourteenth Amendment – an Amendment enacted after the Eleventh Amendment and specifically designed to alter the federal-state balance. Second, a State may at its pleasure waive its sovereign immunity by consenting to suit. But the decision to waive that immunity must be voluntary on the part of the sovereign.

*Id.* (internal citations omitted). This case does not involve abrogation of sovereign immunity by Congress pursuant to the Fourteenth Amendment. However, it does involve a question of whether the State of Texas has waived such immunity.

> [A] state voluntarily waives its Eleventh Amendment immunity by engaging in activity subject to congressional regulation only if (1) the state has been put on notice clearly and unambiguously by the federal statute that the state's particular conduct or transaction will subject it to federal court suits brought by individuals; (2) the state may refrain from engaging in the particular actions without excluding itself from activities otherwise lawfully within its powers; and (3) the state elects to engage in the conduct or transaction after such legal notice has been given.

*AT&T Communications v. Bellsouth Telecomms., Inc.*, 238 F.3d 636, 644 (5th Cir. 2001) (citing *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Ed. Expense Bd.,* 527 U.S. 666, 675-87 (1999)). If there is no waiver or abrogation, then "the Eleventh Amendment bars suit in federal court against a state or state entity, as opposed to a state official, regardless of whether money damages or injunctive relief is sought." *Simmang v. Tex. Bd. of Law Exam'rs*, 346 F. Supp. 2d 874, 880-81 (W.D. Tex. 2004) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-02 (1984)).

Premiere argues that the Eleventh Amendment does not apply in this case because it seeks only judicial review of a TPUC ruling. Premiere is not attempting to obtain money damages, or a declaratory judgment, or injunctive relief. Instead, Premiere claims it is seeking

appellate review of a federal question, which it claims was wrongly decided by TPUC. Premiere avers that the Act authorized state commissions, such as TPUC, to hear disputes like the one between itself and SBC, and at the same time allowed district courts to review such state commission determinations. *See* 47 U.S.C. § 252(e)(6) (2005) ("In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 47 U.S.C. § 251 and this section."). However, in *AT&T Communications v. Bellsouth Telecommunications, Inc.,* the Fifth Circuit rejected this same argument, concluding that an Eleventh Amendment analysis was required, because the state agency was "required to suffer the indignity of being compelled to appear before a federal court." 238 F.3d at 639 n.1.

Defendants do not dispute that this case can proceed against the Commissioners under *Ex Parte Young,* 209 U.S. 123 (1908). However, they dispute Premiere's contention that § 252(e)(6) of the Act confers subject matter jurisdiction over its claims against TPUC. Defendants allege that TPUC is an arm of the state and, as such, is protected from suit by the Eleventh Amendment. *See Regents of the Univ. Of Cal. v. Doe,* 519 U.S. 425, 429 (1997) (noting that sovereign immunity also applies to "certain actions against state agents and state instrumentalities").

"As the Fifth Circuit has recognized, there is no bright-line test for determining whether a political entity is an arm of the state for purposes of Eleventh Amendment immunity. Instead, the matter is determined by reasoned judgment about whether the lawsuit is one which, despite the presence of a state agency as the nominal defendant, is effectively against the sovereign

state." *Yowman v. Jefferson County Cmty. Supervision & Corr. Dep't*, No. 1:03-CV-543, 2005 U.S. Dist. LEXIS 8300, at *36 (W.D. Tex. Jan. 28, 2005) (citing *Vogt v. Board of Comm'rs of the Orleans Levee Dist*., 294 F.3d 684, 688 (5th Cir. 2002)) (internal citations omitted). There are six factors that the Court examines in making its determination as to whether an agency is an arm of the state.

1. Whether the state statutes and case law view the agency as an arm of the state;
2. The source of the entity's funding;
3. The entity's degree of local autonomy;
4. Whether the entity is concerned primarily with local, as opposed to statewide, problems;
5. Whether the entity has the authority to sue and be sued in its own name;
6. Whether the entity has the right to hold and use property.

*United States ex rel. Barron v. Deloitte & Touche, LLP*, 381 F.3d 438, 440 (5th Cir. 2004) (citing *Hudson v. City of New Orleans*, 174 F.3d 677, 679 (5th Cir. 1999) (summarizing six factor test developed in *Clark v. Tarrant County*, 798 F.2d 736, 744-45 (5th Cir. 1986)). "An entity need not show that all of the factors are satisfied; the factors simply provide guidelines for courts to balance the equities and determine if the suit is really one against the state itself." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 327 (5th Cir. 2002). Premiere does not dispute TPUC's contention that it is an arm of the state. This Court agrees with another federal court's decision to treat TPUC as an arm of the state. *See Southwestern Bell Tel. v. Pub. Util. Comm'n of Tex.,* No. SA-04-CA-1144-XR, 2005 WL 1124536 (W.D. Tex. May 11, 2005). The pertinent question, then, is whether the Eleventh Amendment provides TPUC with immunity from suit, regardless of the language contained in § 252(e)(6) of the Act.

This question was resolved by the Fifth Circuit in *AT&T Communications*, *supra*. There,

AT&T was seeking judicial review of a decision made by the Louisiana Public Service Commission ("LPSC"). The Fifth Circuit found that Eleventh Amendment immunity was voluntarily waived by LPSC's participation in the regulatory scheme established by the Act. The court noted that the Act placed regulation of competition between local telecommunications carriers outside of the state's authority. *Id.* at 646 (citing *AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 378 n. 6 (1999)). Further, the court observed that Congress was not obligated to create a mechanism to allow the states to them to participate in such regulation. *Id.* at 647. States could freely accept or reject the Act's gratuitous offer to participate in the regulation of telephone services. *Id.* The court therefore concluded that "LPSC voluntarily waived its state immunity when it accepted the Congressional offer of a gratuity and arbitrated the interconnection dispute in [that] case." *Id.*

This case is analogous to *AT&T Communications.* Like LPSC, TPUC is a state commission which participates in the regulation of telephone services under the Act. Like Louisiana, Texas is under no obligation to participate in such a regulatory scheme. Its acceptance of the gratuitous offer to participate in the Act's regulatory scheme constitutes a voluntary waiver of its Eleventh Amendment immunity. *See Southwestern Bell Tel.*, 2005 WL 1124536, at *1.

The Defendants argue that *AT&T Communications* does not apply to this case for two reasons. First, Defendants maintain that Premiere did not argue that Eleventh Amendment immunity had been waived, but only that the Eleventh Amendment did not apply. Second, Defendants argue that the Supreme Court's decision in *Verizon Maryland v. Public Service Commission of Maryland,* 535 U.S. 635 (2002), casts doubt on the Fifth Circuit's holding in *AT&T Communications*.

Defendants argue that the question of whether TPUC's sovereign immunity has been waived is not properly before the Court, because Premiere did not explicitly raise it. However, the issue of waiver is implicit in an examination of whether a suit is barred by the Eleventh Amendment. While it is true that Plaintiff's Response did not fully illuminate the issue as to why Plaintiff believes the Eleventh Amendment is inapplicable, the Court will not ignore binding precedent which closely mirrors the case currently before the Court. At the Court's request, the parties each submitted briefs discussing the implications of *AT&T Communications* for this case, and it is neither unfair nor unjust for this Court to examine whether TPUC's sovereign immunity has been waived.

The Defendants also argue that the holding of *AT&T Communications* has been abrogated by the Supreme Court's decision in *Verizon Maryland.* In *Verizon Maryland,* the plaintiff dropped its claims against the state commission and proceeded only against the state commissioners in their official capacities. The Supreme Court expressly declined to address the question of whether Eleventh Amendment immunity had been waived, because the state commissioners could be sued under *Ex Parte Young*. 535 U.S. at 645. As Judge Rodriguez aptly stated in addressing the same argument made by TPUC quite recently, "[a]voidance of a question by the Supreme Court does not abrogate a decision directly on point by the Fifth Circuit." *Southwestern Bell Tel.,* 2005 WL 1124536, at *2 (finding that *Verizon Maryland* did not abrogate the Fifth Circuit's decision in *AT&T Communications*). This Court finds that the reasoning of *AT&T Communications* is applicable to this case. TPUC waived its sovereign immunity by participating in the regulatory scheme. Therefore, Defendants' Motion to Dismiss TPUC for Lack of Jurisdiction is **DENIED.**

**III. VENUE**

Defendants also seek to have this case dismissed, or transferred to the Western District of Texas, Austin Division, for improper venue. Plaintiff's Amended Complaint avers that venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (b)(2). Plaintiff's Response mentions that venue is also proper under 28 U.S.C. § 1409 and § 1334.

Federal Rule of Civil Procedure 12(b)(3) allows a case to be dismissed for improper venue, but the movant "bears the burden of demonstrating that the plaintiff filed the lawsuit in an improper venue." *Middlebrook v. Anderson*, No. 3:04-CV-2294-D, 2005 U.S. Dist. LEXIS 1976, at *18 (N.D. Tex. Feb. 11, 2005) (citing *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724-25 (3d Cir. 1982)). Under the general venue statute, venue is proper only in: (1) a district where the defendant resides, (2) a district in which a substantial part of the events giving rise to the claim occurred, or (3) a district in which any defendant may be found, if there is no other district in which the action may be brought. 28 U.S.C. § 1391(b) (2005). If venue is improper, a district court has broad discretion in determining whether to dismiss or transfer a case in the interest of justice. *O'Malley v. Kitchen Dep't Hodge Unit*, No. 3:04-CV-444-D, 2004 U.S. Dist. LEXIS 4220, at *3 (N.D. Tex. Mar. 17, 2004) (citing *Caldwell v. Palmetto State Savs. Bank of S. C.*, 811 F.2d 916, 919 (5th Cir. 1987)).

In an effort to substantiate venue under the second basis in 28 U.S.C. § 1391(b), Premiere alleges generally that a substantial part of the events giving rise to this suit occurred in the Northern District of Texas, and that the property subject to TPUC's orders is situated in the Northern District of Texas, but it does not specify what events occurred in the Northern District nor what property is located here. The Amended Complaint alleges that Premiere's principal

place of business is in Desoto, Texas, which is within the Northern District's boundaries. However, "the fact that a plaintiff residing in a given judicial district feels the effects of a defendant's conduct in that district does not mean that the events or omissions occurred in that district." *Bigham v. Envirocare of Utah, Inc*, 123 F. Supp. 2d 1046, 1048 (S.D. Tex. 2000). All of the Defendants reside in the Western District of Texas, and TPUC's proceedings occurred in the Western District of Texas. The Commissioners have only one office and that office is located in Austin, Texas, which is within the Western District. The Defendants aver that the cause of action arose in the Western District because TPUC handed down the decision at issue during an open meeting in Austin. *See Beazer East, Inc. v. United States Envtl. Protection Agency, Region III*, No. 90-2753, 1990 U.S. Dist. LEXIS 9863, at *2 (E.D. Pa. July 30, 1990) (stating that case "arose with commencement of the administrative proceeding by EPA, Region III" in Eastern District of Pennsylvania), *Honeywell, Inc. v. Consumer Prod. Safety Comm'n*, 566 F. Supp. 500, 502 (D. Minn. 1983) (holding that commencement of administrative proceeding gave rise to cause of action). Therefore, the Court finds that the Defendants have established that venue is improper under 28 U.S.C. § 1391(b).

Premiere also contends that venue is proper pursuant to 28 U.S.C. § 1334 and § 1409. The Defendants contend that the Court may not consider whether venue is proper under these statutes because Premiere does not list them as a basis for venue in its Amended Complaint. However, "a plaintiff need not allege [in the Complaint] the basis for filing in a particular district court." 17 MOORE'S FEDERAL PRACTICE - CIVIL § 110.01.[5][c] (2005). Thus, the Court will consider whether venue is proper under § 1334 and § 1409.

The district court where a Chapter 11 action is commenced or pending has exclusive

jurisdiction under 28 U.S.C. § 1334(e) in cases involving "(1) [the debtor's] property, wherever located, . . . as of the commencement of such case, and of property of the estate; and (2) over all claims or causes of action that involve construction of section 327 of title 11, United States Code, or rules relating to disclosure requirements under section 327." Section 1409 prescribes proper venue for cases arising under or related to Chapter 11. Premiere argues that this case affects its property rights and thus, venue is proper under these bankruptcy statutes in this district, where Premiere's bankruptcy is pending.

The Court is not persuaded that the cited bankruptcy statutes apply here. This is not an adversary proceeding under the Bankruptcy Code. The relief requested by this suit is a judicial review of TPUC's decision, and a remand to TPUC for further proceedings. Judicial review is not "property" nor is it an asset of the debtor's estate. Section 1334 is only a jurisdictional statute. Section 1409 relates to venue, but the Court does not find that this case arises under or is related to Chapter 11. Thus, the Court finds that venue does not lie in the Northern District of Texas under 28 U.S.C. § 1409.

Since venue is improper in the Northern District of Texas, the Court must dismiss, or in the interests of justice, transfer the case to any district or division in which it could have been brought. *See* 28 U.S.C. § 1406(a) (2005). The Court has broad discretion in determining whether to dismiss or transfer this case. *O'Malley*, 2004 U.S. Dist. LEXIS 4220, at *3. The Court finds that transfer "would facilitate a more expeditious resolution of the merits of the controversy in a . . . proper forum and would avoid the costs and delay that would result from dismissal and refiling." *Tex. Source Group v. CCH, Inc.*, 967 F. Supp. 234, 239 (S.D. Tex. 1997) (quoting *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582, 594 (E.D. Va. 1992)); *see also*

*Abramson v. Am. Online, Inc.*, No. 3:05-CV-0076-M, 2005 U.S. Dist. LEXIS 10095, at *11-*12 (N.D. Tex. May 25, 2005). Thus, the Court **GRANTS** the Motion to Transfer and **ORDERS** that this case be transferred to the Western District of Texas, Austin Division.

**SO ORDERED.**

June 16, 2005.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE